*Attorney Grievance Commission v. Denise Leona Bellamy*, Misc. Docket AG Nos. 6 & 13, September Term 2016

**ATTORNEY GRIEVANCE COMMISSION — DISCIPLINE — DISBARMENT —** Respondent, Denise Leona Bellamy, violated Maryland Lawyers' Rules of Professional Conduct 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 3.3, 3.4, 8.1, and 8.4. These violations stemmed from Respondent's misconduct resulting in seven separate complaints against her. Respondent added to her misconduct by obstructing the disciplinary process through repeatedly failing to respond to Bar Counsel, and, in one instance, directly refusing to provide lawfully requested information. The sanction is disbarment.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG Nos. 6 & 13

September Term, 2016

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

DENISE LEONA BELLAMY

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: June 21, 2017

The Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed two Petitions for Disciplinary or Remedial Action against Respondent, Denise Leona Bellamy, in connection with seven separate complaints filed against her. Bar Counsel later moved to consolidate the two petitions for judicial hearing, post-hearing proceedings, and disposition, and we granted that motion. Pursuant to Maryland Rules 19-722(a) and 19-727, this Court transmitted both cases to the Circuit Court for Prince George's County and designated the Honorable John Paul Davey to conduct an evidentiary hearing and make findings of fact and conclusions of law.

Respondent failed to respond to the charges filed against her, and therefore the hearing judge entered an Order of Default on October 19, 2016. A hearing was held on December 2, 2016. Respondent did not appear at the hearing and has not presented any evidence or arguments on her behalf at any point throughout these proceedings.

Bar Counsel filed Proposed Findings of Fact and Conclusions of Law and presented the Commission's case before the hearing judge. The hearing judge granted Bar Counsel's request for admission of facts and genuineness of documents and treated the factual assertions included therein as established. On January 23, 2017, the hearing judge signed an Order adopting Bar Counsel's Proposed Findings of Fact and Conclusions of Law. Respondent has filed no exceptions.

We summarize here those findings of fact and conclusions of law.

I

**The Hearing Judge's Findings of Fact**

*Respondent's Prior Disciplinary History*

Respondent was admitted to the Maryland Bar on December 13, 2005. She was suspended from the practice of law in Maryland by consent for a period of ninety days, beginning October 11, 2012, due to a prior disciplinary proceeding in which she was found to have violated Rules 1.3, 1.15, and 1.16(d) of the former Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[1] It was determined in that proceeding that Respondent, after being discharged in two matters, failed to return retainer fees to which she was not entitled. Respondent was reinstated to the practice of law on January 15, 2013.

On March 24, 2016, Respondent was temporarily suspended for failure to pay her annual assessment to the Client Protection Fund of Maryland. She remained suspended as of the filing date of the two Petitions for Disciplinary or Remedial Action that are before us in this proceeding.

*Complaint of Cindy Kamara*

On or about April 2, 2014, Cindy Kamara hired Respondent to represent her in a civil matter before the District Court sitting in Prince George's County. They executed a retainer agreement, and Ms. Kamara paid Respondent $500. Respondent did not deposit that money into an attorney trust account and did not maintain records pursuant to former Maryland Rule 16-606.1. Instead, she converted the money to her own use before earning it. Respondent did little to no work in connection with the case, failing to enter her

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed The Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified, without substantive change, in Title 19 of the Maryland Rules. Because we judge Respondent's conduct against the extant law at the time of her actions, we refer to the MLRPC throughout.

appearance on behalf of Ms. Kamara or file an action on her behalf. Respondent failed to return Ms. Kamara's phone calls in May and June 2014 and, after arranging to meet Ms. Kamara in July, canceled the meeting and failed to reschedule. On or about October 29, 2014, Ms. Kamara demanded a refund. Respondent never refunded the retainer fees and never gave Ms. Kamara her client file.

Ms. Kamara filed a complaint against Respondent with the Attorney Grievance Commission. Bar Counsel three times forwarded the complaint with a request for information, but Respondent never replied. A Commission investigator later hand-delivered all three of Bar Counsel's letters to Respondent. Respondent told the investigator she would contact Bar Counsel that day but did not do so, and she has never contacted Bar Counsel regarding the Kamara matter.

*Complaint of Eraina Dixon*

On or about October 31, 2014, Respondent and Eraina Dixon executed a retainer agreement, in which Respondent agreed to represent Ms. Dixon in her petition for legal guardianship of her grandson in order to pursue his enrollment in her local public school. Ms. Dixon paid Respondent a retainer fee of $750, which Respondent converted to her own use before earning it, failing to deposit it in a client trust account or maintain financial records. Respondent did little to no work on the case, failing to enter her appearance or file any court documents in the matter. Although she told Ms. Dixon that she had prepared an affidavit for her, Respondent never provided such a document to Ms. Dixon. Respondent ignored Ms. Dixon's many attempts to contact her throughout the Fall. On December 29, 2014, Respondent e-mailed Ms. Dixon promising to meet with her in two

3

days, but failed to meet with Ms. Dixon on the appointed day.  Ms. Dixon eventually discharged Respondent and requested a refund.  Respondent failed to refund the retainer fee or give Ms. Dixon her client file.

On July 21, 2015, Ms. Dixon filed a complaint against Respondent with the Attorney Grievance Commission.  Respondent ignored Bar Counsel's multiple attempts to contact her regarding the complaint and never replied to the request for information.

*Complaint of Yolanda Curtis*

In or about August 2014, Yolanda Curtis retained Respondent to represent her as plaintiff in a suit in the District Court sitting in Prince George's County, seeking recovery of Ms. Curtis's home rental security deposit arising from a previous tenancy.  Respondent told Ms. Curtis that her fee would be approximately $1,000 to $3,000 and would be deducted from the recovery in the action.  Respondent did not explain to Ms. Curtis the basis of this fee nor did she execute a written agreement regarding the fee with Ms. Curtis.

On or about September 5, 2014, Respondent failed to appear in court in Ms. Curtis's action and a judgment was entered against Ms. Curtis.  Respondent filed a "Motion to Vacate the Judgment and Set the Matter back in for Trial", claiming that she had not received notice of an alleged time change in the hearing.  The court granted the motion and set a new date for the hearing.  Respondent was late to court for that hearing.  Nevertheless, the court entered judgment in favor of Ms. Curtis and against defendant Earl White, Jr., in the amount of $1,054, costs of $68, and attorney's fees of $1,375, coming to a total payment due from defendant of $2,497.

Mr. White contacted Respondent seeking to satisfy the judgment.  Roughly three

4

weeks later Respondent replied, stating that Ms. Curtis had authorized her to accept the judgment on behalf of Ms. Curtis. Mr. White paid Respondent, who then converted the money to her own use without informing Ms. Curtis that the judgment had been satisfied. Respondent falsely advised Mr. White that she had filed a notice of satisfaction with the court, and she ignored his subsequent attempts to contact her with a request that she file the notice of satisfaction. Mr. White eventually asked the court to enter a notice of satisfaction, which it did on March 30, 2015.

Meanwhile, unaware that Mr. White had satisfied the judgment, Ms. Curtis filed a Request for Garnishment of Mr. White's wages. She then learned that Mr. White had paid the judgment. On July 6, 2015, Ms. Curtis filed a complaint with the Attorney Grievance Commission against Respondent. Bar Counsel made multiple attempts to contact Respondent and request information regarding this matter, and, though in one instance Respondent signed the return receipt on Bar Counsel's message, she never replied to Bar Counsel.

*Complaint of Angela D. Alsobrooks, State's Attorney for Prince George's County*

On or about February 20, 2004, United States Park Police conducted a traffic stop of Respondent and performed a Standardized Field Sobriety Test, which Respondent failed. She was arrested and charged with Driving Under the Influence ("DUI") and other violations including speeding, driving on an expired license and driving with a suspended registration. She pleaded guilty before the United States District Court for the District of Maryland and was sentenced to supervised probation with additional conditions of probation.

5

On March 31, 2013, Maryland State Police found Respondent in her vehicle, crashed into a roadside ditch. Respondent failed a field sobriety test and was charged with DUI, reckless driving, and driving on a suspended license. On March 20, 2014, Respondent appeared in the Circuit Court for Prince George's County on those charges, and, when asked by the court whether she had any prior criminal convictions, she lied, replying "no" despite her previous DUI conviction. She pleaded guilty and was sentenced to unsupervised probation before judgment.

The State's Attorney's Office for Prince George's County, upon discovering the falsehood, filed a motion to strike the judgment; the motion was granted. The State's Attorney also notified Bar Counsel of this matter, who docketed a complaint against Respondent and sent a letter to her home and office notifying her and seeking information. Respondent requested a ten-day extension of time to respond, which was granted. Respondent failed to respond before the extended deadline.

*Complaint of Beverly Christina Bradley-Topping*

Ms. Bradley-Topping retained Respondent to represent her in the filing of a divorce action and paid a retainer fee of $2,145. Respondent converted this fee to her own use before earning it, did not deposit it into a client trust fund, and did not maintain an accounting. Respondent filed a complaint for divorce on behalf of Ms. Bradley-Topping on October 27, 2014, without first discussing with her the grounds for divorce or providing her with a draft of the complaint. After the document was filed, Ms. Bradley-Topping contacted Respondent and asked her to amend the grounds for divorce to "desertion". Respondent told Ms. Bradley-Topping that she would amend the complaint but never did

6

so.

Respondent failed repeatedly to communicate with Ms. Bradley-Topping. She scheduled phone calls with Ms. Bradley-Topping on November 17, November 22, and December 11, 2014, yet failed to call her client as promised. Meanwhile, the court set a scheduling conference for March 3, 2015. Respondent delayed until the day before that conference to inform Ms. Bradley-Topping of it.

The court then entered a Scheduling Order, which Respondent repeatedly violated. She failed to provide required documents by the deadline, failed to file a Joint Statement of Marital and Non-marital Property by the deadline, failed to respond to discovery or inform Ms. Bradley-Topping of the discovery requests, and failed to timely contact the assigned Court Appointed Mediator. Opposing counsel filed, and the court granted, a Motion to Compel Discovery and/or for Sanctions. Respondent never provided discovery, causing the court to enter an order of sanctions against Ms. Bradley-Topping for $693. Respondent never informed her client of the motion to compel or the sanctions entered against her.

Respondent continued her pattern of failing to respond to Ms. Bradley-Topping's requests for information, told Ms. Bradley-Topping that she had prepared a draft settlement agreement though she had not done so, and took no steps to settle the matter despite Ms. Bradley-Topping's wishes. She delayed until the day before the merits hearing to inform Ms. Bradley-Topping of the hearing and advise her that she would need to bring a witness.

After the merits hearing, the court granted a limited divorce and ordered Respondent to submit a proposed Judgment of Limited Divorce Order. Respondent prepared a draft

7

order and shared it with Ms. Bradley-Topping, who stated that it was "imperative that [her] proper grounds be reflected" in the order (i.e., desertion) and asked Respondent to strike the $693 owed to the opposing party, stating that she had "no knowledge what this fee [was] for." Respondent, however, filed the proposed order with no material changes.

Ms. Bradley-Topping discharged Respondent on July 30, 2015, and requested that she withdraw her appearance, refund the retainer fee, and provide Ms. Bradley-Topping with her client file. Respondent did none of those things.

Ms. Bradley-Topping filed a complaint against Respondent with the Attorney Grievance Commission. Bar Counsel twice requested information from Respondent regarding the complaint, but Respondent failed to reply. On November 20, 2015, Bar Counsel issued a subpoena to obtain Respondent's bank records, and later a Commission investigator made contact with Respondent, requesting the name of her current bank. Respondent refused to answer, stating: "You're the investigator, you figure it out."

*Complaint of Courtney Smith Lamar*

On May 27, 2015, Ms. Lamar signed a retainer agreement with Respondent in connection with a complaint for divorce filed against Ms. Lamar. The parties agreed to an hourly rate of $250, and Ms. Lamar paid Respondent a retainer of $1,800. Respondent committed to providing monthly billing invoices but never provided them. Respondent failed to deposit this money into an attorney trust account, did not maintain records of the fee, and converted the fee to her own use before earning it.

At some point during Respondent's representation, Ms. Lamar sought reconciliation with her husband. Respondent promised she would send a letter to opposing counsel

8

regarding the possibility of reconciliation, but she never did so. Respondent filed an Answer and a Certificate Regarding Discovery, and entered her appearance in the case. Respondent thereafter failed to perform any meaningful work in the action. Respondent failed to reply to Ms. Lamar's requests for information, failed to notify her about or respond to discovery requests, and failed to respond to four attempts by the court to contact Respondent to clear court dates. The court then set a scheduling conference, and Respondent failed to inform Ms. Lamar of the conference or prepare a financial statement in advance of the conference.

After repeated attempts by Ms. Lamar to contact Respondent, on November 10, 2015, Respondent finally sent Ms. Lamar a message. Ms. Lamar then discharged her and requested a refund and her client file. Despite having been fired by her client, Respondent appeared in court for the scheduling conference on November 12, 2015, and failed to withdraw from the case. She failed to refund her retainer fee or provide the client file.

On November 17, 2015, Ms. Lamar filed a complaint with the Attorney Grievance Commission regarding this conduct. Bar Counsel sent a letter to Respondent and she requested a ten-day extension of time to reply, which was granted, but Respondent failed to reply.

*Complaint of Allwell Onwubuche*

Respondent represented a client in divorce and custody proceedings brought by plaintiff Allwell Onwubuche in the Circuit Court for Prince George's County. On August 7, 2015, Respondent appeared on behalf of her client, and proffered to the court that Mr. Onwubuche had engaged in a physical altercation with her client, during which Mr.

9

Onwubuche shoved the parties' child. Respondent stated that her client then called the police, and that she had a copy of the police report. Respondent was aware at the time that the police report contained no mention of Mr. Onwubuche shoving the child. His attorney requested a copy of the police report, but Respondent refused to produce it. In response, Mr. Onwubuche filed a complaint against Respondent with the Attorney Grievance Commission. Bar Counsel forwarded the complaint to Respondent and twice requested information, but Respondent never replied.

## The Hearing Judge's Conclusions of Law

Based upon the record and the above-summarized findings of fact, the hearing judge adopted Bar Counsel's proposed conclusions of law, concluding by clear and convincing evidence that Respondent violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.5, 1.15, 1.16, 3.3, 3.4, 8.1, and 8.4.

## II

### *Standard of Review*

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Good*, 445 Md. 490, 512 (2015) (citation omitted). The Court will accept the hearing judge's findings of fact unless clearly erroneous. *Id.* If no exceptions are filed, this Court may treat the facts as conclusively established. *Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 659-60 (2009); *Attorney Grievance Comm'n v. Lee*, 390 Md. 517, 525 (2006). The Court reviews the hearing judge's legal conclusions *de novo*. *Good*, 445 Md. at 512.

10

III

We summarize below the hearing judge's conclusions of law and, upon our independent review of the record, affirm the hearing judge on nearly all matters, parting company on only three issues.

*MLRPC 1.1*

MLRPC 1.1 provides that: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." An attorney's representation may be incompetent where that attorney has failed to take necessary, fundamental steps to further clients' cases, *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 222-23 (2012), or has failed to provide legal services required of a client and failed to appear in court for scheduled proceedings. *See, e.g.*, *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 369-70 (2009); *Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 403 (2001). Neglecting a client's case, failing to answer discovery requests, failing to file opposition motions, failing to enter an appearance, and arriving late to a hearing may also constitute incompetent representation. *See, e.g.*, *Kwarteng*, 411 Md. at 658; *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 362, 367 (2006).

The hearing judge concluded, and we agree, that Respondent failed to provide competent representation to Ms. Kamara, Ms. Dixon, Ms. Curtis, Ms. Bradley-Topping, and Ms. Lamar. In the Curtis matter, Respondent failed to appear at a scheduled hearing, causing the court to enter judgment against her client. She then was late to the hearing once the matter was reset. After receiving the $2,497 judgment, Respondent failed to file

11

a notice of satisfaction, inform her client, or remit the funds to her client. In the Bradley-Topping matter, Respondent failed to respond to her client for weeks or months at a time. On two occasions she waited until the day before to inform her client of key proceedings. She failed to respond to discovery requests and ignored court orders. Her discovery failures caused sanctions to be ordered against her client. In the Lamar matter, Respondent failed to respond to discovery requests, and failed to inform her client of the scheduling conference or prepare a financial statement for the conference. She failed to respond to numerous attempts by Ms. Lamar to contact her, eventually prompting Ms. Lamar to discharge her.

*MLRPC 1.2*

MLRPC 1.2(a) requires a lawyer to "abide by a client's decisions concerning the objectives of the representation and, when appropriate . . . consult with the client as to the means by which they are to be pursued." An attorney's failure to prosecute her client's case, combined with a failure to communicate with the client about the status of the case, may constitute a violation of this rule. *See Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 220 (2006). Failure to make any significant effort to recover damages for a client may also constitute a violation of the rule. *See Attorney Grievance Comm'n v. Fox*, 417 Md. 504, 531 (2010).

The hearing judge concluded that Respondent violated Rule 1.2(a) in the Kamara, Dixon, Bradley-Topping, and Lamar matters. We agree. Respondent failed utterly to take any significant steps in the Kamara and Dixon matters, failing even to enter her appearance in those matters. In the Dixon matter, she failed to prepare and file an affidavit pursuant

12

to her client's wishes, preventing Ms. Dixon from enrolling her grandson in school. In the Bradley-Topping matter, she failed to abide by her client's objective of including desertion as grounds for divorce and failed to amend the complaint when her client requested that she do so. After entering her appearance on behalf of Ms. Lamar, Respondent neglected the matter and then failed to withdraw her appearance in the case after her client requested that she do so.

All of these actions and inactions were obvious failures to abide by her clients' wishes in their representation.

*MLRPC 1.3*

Rule 1.3 requires that attorneys act with reasonable diligence and promptness in representing a client. Neglect and inattentiveness to a client's interests, repeated failure to communicate, and failure to provide an accounting for fees may violate the rule. *See, e.g.*, *Gisriel*, 409 Md. at 371. Because Respondent provided essentially no representation in the Kamara and Dixon matters and was neither diligent nor prompt in pursuing the Curtis, Bradley-Topping, and Lamar matters, the hearing judge concluded that the same acts that violated Rule 1.1 also violated Rule 1.3. We agree. Respondent's egregious pattern of neglect and inattentiveness to her clients' interests and attempts to communicate with her demonstrated a lack of diligence that violates Rule 1.3.

*MLRPC 1.4*

Rule 1.4 provides that:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required

13

by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information;

. . . .

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

A failure to surrender documents to which the client is entitled may violate Rule 1.4(a)(3), *Attorney Grievance Comm'n v. Edib*, 415 Md. 696, 718 (2010), and an attorney's failure to inform the client of discovery sanctions or respond to numerous case-status requests may constitute a violation of Rules 1.4(a) and (b). *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 321-22 (2012).

We affirm the hearing judge's conclusions of law that Respondent violated Rule 1.4(a) in the Kamara, Dixon, Curtis, Bradley-Topping, and Lamar matters. Respondent maintained a chronic pattern of failure to keep those clients informed as to the status of their cases, ignoring their multiple attempts to contact her regarding their litigation, and frequently arranging meetings and then canceling or simply failing to meet. In the Curtis matter, Respondent failed to inform her client that she had received payment of the judgment. In the Dixon, Bradley-Topping, and Lamar matters, she failed to surrender client files after she was discharged and those clients requested their documents.

Respondent violated Rule 1.4(b) in the Bradley-Topping and Lamar matters by failing to notify those clients of discovery requests or respond to those requests. In the Bradley-Topping matter, Respondent failed to inform her client of the motion to compel and the discovery sanctions entered against her client due to Respondent's negligence. In the Lamar matter, Respondent failed to provide a billing invoice at any point during her

14

roughly five months of representation.

*MLRPC 1.5*

Rule 1.5(a) provides that:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

In order to be reasonable, fees must be commensurate with the legal services provided.

*See, e.g., Attorney Grievance Comm'n v. Chapman*, 430 Md. 238, 275-76 (2013).

Because Respondent performed little or no meaningful work in the Kamara, Dixon, Bradley-Topping, and Lamar matters, we affirm the hearing judge's finding that Respondent's fees were incommensurate and unreasonable. Respondent took fees of $500 from Ms. Kamara, $750 from Ms. Dixon, $2,145 from Ms. Bradley-Topping, and $2,000 from Ms. Lamar. In the Kamara and Dixon matters, Respondent performed essentially no work at all, and in both the Bradley-Topping and the Lamar matters, Respondent failed to provide fundamental services, including participating in discovery and mediation and responding to motions by the opposing party. In the Lamar matter, Respondent provided some services initially but then abandoned the case. We agree with the hearing judge that

15

in all of those matters, the fees were unreasonable considering the minimal, or nonexistent, work Respondent performed for her clients.

We part company with the hearing judge in his conclusion that Respondent violated Rule 1.5 by charging an unreasonable contingency fee in the Curtis matter. "[A]n agreement, reasonable when made, may become unreasonable in light of changed facts and circumstances. . . . the question of the reasonableness of a contingent fee agreement, or one with contingent features, must be revisited after the fee is quantified or quantifiable and tested by the factors enumerated in Rule 1.5(a)." *Attorney Grievance Comm'n v. Pennington*, 355 Md. 61, 74 (1999) (internal citations omitted). Respondent did not have a written contingent fee arrangement with Ms. Curtis, and she gave a relatively wide range for her potential fee, from $1,000 to $3,000. The judgment in the underlying case was broken into recovery for the home security deposit and attorney's fees. But whether the attorney's fees portion of that judgment was unreasonable was not addressed in Bar Counsel's proposed findings of fact and conclusions of law, and the hearing judge made no factual finding or legal conclusion on that matter. Moreover, Respondent's actions suggest outright theft, rather than an improper fee arrangement. Given the sparsity of the record on this subject, we are not persuaded that Respondent violated Rule 1.5 by charging an unreasonable fee in the Curtis matter.

*MLRPC 1.15*

Rule 1.15 provides that:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained

16

pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

. . . .

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

The hearing judge concluded that Respondent violated Rule 1.15(a) because she failed to create and maintain records as required by the Rules.[2] Again, we agree. Respondent violated Rule 1.15(c) by failing to create and maintain records as required by the rule, and additionally by failing to deposit client fees into an attorney trust account. In the Kamara, Dixon, Bradley-Topping, and Lamar matters, she used unearned portions of her clients' money instead of holding those retainer fees in trust until earned. In addition, Respondent violated Rule 1.15(d) by failing in each of those matters to return unearned retainer fees to her clients.

In connection with the Curtis matter, Respondent violated Rule 1.15(a) and (d) by

---

[2] At the time of Respondent's misconduct, the accounting rules were codified at Maryland Rule 16-606.1, rather than the current codification at Title 19, Chapter 400 of the Maryland Rules.

17

receiving property from the defendant, Mr. White, in which her client had an interest, and then failing to inform Ms. Curtis or deliver the portion of the judgment to which Ms. Curtis was entitled.

*MLRPC 1.16*

Rule 1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The failure to return unearned fees and client files following termination of the representation constitutes a violation of this rule. *Attorney Grievance Comm'n v. Park*, 427 Md. 180, 193 (2012) (per curiam); *Attorney Grievance Comm'n v. Rose*, 391 Md. 101, 111 (2006). We affirm the hearing judge's conclusion that Respondent violated Rule 1.16(d) by failing to surrender client files and unearned fees in the Kamara, Dixon, Curtis, Bradley-Topping, and Lamar matters.

*MLRPC 3.3*

Rule 3.3(a) states that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal." We affirm the hearing judge's conclusion that Respondent violated this rule in her DUI case through her false representations to the court. Rule 3.3(a) is located under the heading entitled "Advocate", which governs a lawyer's conduct in representing her clients in the courts of this State. But, "[t]his Court has not excluded from the application of MLRPC 3.3 those attorneys who represent themselves in litigation."

18

*Attorney Grievance Comm'n v. Trye*, 444 Md. 201, 217 (2015) (attorney who represented herself in her divorce proceedings violated Rule 3.3(a)) (citing *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 442-45 (1994) (finding a violation of MLRPC 3.3 where an attorney representing himself stated falsely to a District Court judge that he had no points on his driver's license)). Just as in *Myers,* Respondent was questioned by a judge whether she had prior convictions on her record, and she stated falsely that she did not. As we held in *Myers*, this was a violation of Rule 3.3(a).

*MLRPC 3.4*

> Rule 3.4 states that a lawyer shall not:
>
> (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
> . . . .
> (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
> (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party[.]

The hearing judge concluded that Respondent violated Rule 3.4 in three matters: she violated Rule 3.4(a) by failing in the Onwubuche matter to provide a copy of the police report to Mr. Onwubuche's counsel; she violated Rule 3.4(c) by failing to appear in court at a scheduled hearing in the Curtis matter; she again violated Rule 3.4(c) by failing to abide by the Scheduling Order in the Bradley-Topping matter; and also in the Bradley-Topping matter, she violated Rule 3.4(d) by failing to comply with reasonable discovery requests. *See Steinberg*, 395 Md. at 365-67 (finding that an attorney violated MLRPC 3.4 after repeatedly delaying the discovery process, delaying depositions, and failing to provide

19

requested documents).

We agree with the hearing judge that Respondent violated Rule 3.4(c) by failing to produce discovery in the Bradley-Topping matter even after the court entered a motion to compel discovery. In refusing to provide the requested discovery, Respondent directly flouted the court's order, and thus "knowingly disobey[ed] an obligation" she was bound to perform for the court, in violation of the rule. MLRPC 3.4(c). We also agree that Respondent violated Rule 3.4(d) by failing to comply with reasonable discovery requests in the Bradley-Topping matter. The deliberate failure to produce documents in discovery or to appear for deposition in compliance with discovery requests and a court order is a violation of Rule 3.4(d).

However, we disagree that Respondent violated Rule 3.4(a) in the Onwubuche matter. While her behavior in not providing the police report per opposing counsel's request was exceedingly unprofessional, the record indicates this was an informal request, not a discovery request, for what appears to be a public document. Rule 3.4(a) makes it a violation to *unlawfully* obstruct access to evidence or alter, destroy, or conceal evidence. Bar Counsel has identified no law that Respondent violated through her poor behavior. We have held that a lawyer's withholding, without good reason, requested documents during discovery may violate Rule 3.4(a). *See Attorney Grievance Comm'n v. Ucheomumu*, 450 Md. 675, 704-05 (2016). But, we are not persuaded that there is clear and convincing evidence in this record that Respondent's failure to act was a violation of Rule 3.4(a).

Likewise, we are not persuaded that Respondent violated Rule 3.4(c) when she failed to appear in court in the Curtis matter, later claiming that she had not received notice

20

of an alleged time change in the hearing. This failure, as discussed above, demonstrated incompetence. But whether this was a knowing act of disobedience to the tribunal's order—rather than the nonperformance of an attorney with a chronic inability to fulfill her basic responsibilities—has not been made clear in the record.

*MLRPC 8.1*

Rule 8.1 provides that:

[A] lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]

Letters from Bar Counsel requesting information concerning a complaint are lawful demands for information, and a knowing failure to respond to such a letter is a violation of Rule 8.1. *See Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 248-49 (2000). The hearing judge concluded, and we agree, that Respondent violated Rule 8.1(b) as to all seven complaints constituting this case. Respondent failed to provide any substantive response to Bar Counsel's reasonable requests for information in all seven matters. In addition, Respondent directly refused to provide her banking institution's name to Bar Counsel's investigator when she stated "[y]ou're the investigator, you figure it out."

*MLRPC 8.4(b)*

Rule 8.4(b) provides that it is professional misconduct for an attorney to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer. Absence of criminal prosecution does not necessarily mean Rule 8.4(b) has not

been violated.  *See Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 593-94 (1995).

Comment 2 to the rule explains that not all illegal conduct reflects adversely on fitness to

practice, but that, traditionally,

> the distinction was drawn in terms of offenses involving 'moral turpitude.'
> . . . Although a lawyer is personally answerable to the entire criminal law, a
> lawyer should be professionally answerable only for offenses that indicate
> lack of those characteristics relevant to law practice. Offenses involving
> violence, dishonesty, or breach of trust, or serious interference with the
> administration of justice are in that category.

Maryland Code Annotated, Criminal Law § 7-104(a) (2002, 2012 Repl. Vol., 2016

Supp.) deals with theft, and provides that a person may not willfully or knowingly obtain

or exert unauthorized control over property if that person intends to deprive the owner of

the property.  Persons convicted of theft of property worth at least $1000 are guilty of a

felony under § 7-104(g)(1).  Section 7-113(a) provides that a fiduciary may not

fraudulently and willfully appropriate money that the fiduciary holds in trust.

We agree with the hearing judge's conclusion that Respondent violated Rule 8.4(b)

in the Curtis matter because she received the full judgment amount from the defendant and

never remitted it to her client.  Respondent's failure to inform her client of her receipt of

the money supports the conclusion that Respondent intended to deprive Ms. Curtis of

money that was rightly hers.

*MLRPC 8.4(c)*

Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in

conduct involving dishonesty, fraud, deceit, or misrepresentation.  We agree with the trial

judge's findings that Respondent repeatedly violated this rule.  In the Curtis matter,

22

Respondent dishonestly and deceitfully took possession of, and retained, the money judgment owed to her client and misrepresented to the defendant in that action (Mr. White) that Respondent had filed a notice of satisfaction in the case. In the Dixon matter, Respondent represented to her client that she had drafted an affidavit when she had not done so. In the Bradley-Topping matter, Respondent told her client that she would file an amended divorce complaint to include grounds of desertion, but she did not do so. She also falsely told Ms. Bradley-Topping that she had prepared a draft settlement. In regards to the Alsobrooks complaint, during her hearing on charges of driving under the influence, Respondent misrepresented to the court that she had no prior convictions.

*MLRPC 8.4(d)*

Rule 8.4(d) provides that it is professional misconduct for an attorney to engage in conduct prejudicial to the administration of justice. Such conduct includes actions that reflect negatively on the legal profession and set a poor example for the public at large. *See Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22 (2007). Conduct that tends to bring the legal profession into disrepute is also considered prejudicial to the administration of justice. *Rose*, 391 Md. at 111. Failure to appear in court when required to do so, neglect of client matters, and lack of competence may also violate the rule. *See, e.g.*, *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 555-56 (2014).

We affirm the hearing judge's conclusion that Respondent's conduct was prejudicial to the administration of justice, in violation of Rule 8.4(d). Her behavior, involving persistent dishonesty and incompetence, undermines the legal profession's reputation and the confidence of the public. Respondent, moreover, wasted the courts' time and her

23

clients' time through her lack of preparation, diligence, and general nonperformance of her role as an advocate and an officer of the court. Respondent's failure to appear in the Curtis matter resulted in the court entering judgment, then later vacating its judgment and re-setting the case for trial. Respondent's failure to engage in discovery in the Bradley-Topping matter resulted in a motion to compel and discovery sanctions. Last, Respondent's utter failure to cooperate with Bar Counsel and its investigators, frustrating the disciplinary process, was prejudicial to the administration of justice. *Brown*, 426 Md. at 323-25.

*MLRPC 8.4(a)*

Rule 8.4(a) provides that it is professional misconduct for an attorney to violate or attempt to violate the MLRPC. Having concluded that Respondent violated multiple rules, the trial judge concluded that Respondent also violated Rule 8.4(a); we agree. *See Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 411 (2009).

IV

*The Sanction*

For the reasons set forth here, we entered a per curiam order on April 3, 2017, immediately disbarring Respondent. *Attorney Grievance Comm'n v. Bellamy*, 452 Md. 517 (2017). Disbarment is the obvious sanction for Respondent's repeated and egregious violations of the MLRPC. Here, as in all such matters, "we are guided by our 'interest in protecting the public and the public's confidence in the legal profession.'" *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (quoting *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 595 (2005)). Consequently, "the purpose of attorney

24

disciplinary proceedings is not to punish the lawyer, but to protect the public as well as to deter other lawyers from engaging in similar misconduct." *Pennington*, 387 Md. at 596.

As described at length above, Respondent violated numerous rules repeatedly and seemingly without remorse. She failed utterly to cooperate with Bar Counsel in the disciplinary process. And, she exhibited a disturbing pattern of dishonesty, individual instances of which could warrant disbarment on their own. *See, e.g.*, *Attorney Grievance Comm'n v. Peters-Hamlin*, 447 Md. 520, 547-49 (2016) (restating the proposition that disbarment ordinarily is the sanction for an intentional violation of MLRPC 8.4(c) (dishonesty)). Accompanied, however, by so many violations of the MLRPC, the sanction here is abundantly clear—disbarment is the only appropriate outcome.